UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOE BURGOS VEGA, | : | CIVIL ACTION NO.: |
| | : | 3:04CV1215 (DFM) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THERESA LANTZ, ET AL., | : | |
| | : | |
| Defendants. | : | NOVEMBER 9, 2009 |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

The plaintiff, Joe Burgos Vega ("Mr. Vega"), submits the following Memorandum of Law in Opposition to the defendants', Anthony J. Bruno and Theresa Lantz, Motion for Reconsideration, dated October 5, 2009 ("Defendants' Motion"), and accompanying memorandum of law ("Defendants' Memorandum") [Dkt. Nos. 190 & 191].

## PRELIMINARY STATEMENT

Defendants' Motion raises, for the first time, claims that should have been asserted, if at all, in the defendants' Motion for Summary Judgment. Hiding behind what they claim to be an intervening change in the law, the defendants seek, by way of reconsideration, summary judgment regarding Mr. Vega's claims that remain in this case.

Defendants' Motion, for example, claims that this Court should reconsider its Summary Judgment Ruling [Dkt. No. 188] on the basis that the Supreme Court recently abrogated the personal involvement standard set forth by the Second Circuit in Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). Not only is the defendants' claim substantively incorrect (the Supreme Court's decision in Iqbal did not abrogate the Colon standard), but it is procedurally improper

**ORAL ARGUMENT REQUESTED**

ME1 9260174v.1

because the defendants, whether by design or through oversight, did not challenge the personal involvement of Commissioner Lantz or Reverend Bruno in their Motion for Summary Judgment. Indeed, any intervening change by the Supreme Court to the personal involvement standard is irrelevant to this Court's summary judgment ruling because these defendants did not request summary judgment as to these claims in their Motion for Summary Judgment and this Court had no reason to - and did not, therefore - apply the Colon test.

Because it is well established that a motion for reconsideration is not "a vehicle to advance new theories a party failed to articulate in arguing the underlying motion"; Johnson v. Killian, No. 07 Civ. 6641 (NRB), 2009 U.S. Dist. LEXIS 55114, at *2 (S.D.N.Y. June 23, 2009); Defendants' Motion should be denied. Notwithstanding the procedural impropriety of Defendants' Motion, it still should be denied because Mr. Vega has presented evidence that demonstrates that Commissioner Lantz and Reverend Bruno were "personally involved", as that term was defined in Iqbal, in the five overarching claims that remain in this case.

## RELEVANT PROCEDURAL HISTORY

On January 11, 2007, the defendants filed a motion for summary judgment [Dkt. No. 146]. The defendants asserted various legal grounds in their memorandum of law in support of their motion ("Defendants' Summary Judgment Memorandum") [Dkt. No. 147]. Included in these grounds was the defendants' claim that Mr. Vega "has no evidence of personal involvement" of Defendants Robert DeVeau and Imam Abdul Majid Karim Hasan. Defendants' Summary Judgment Mem. at 2, 34-37. *The defendants did not contend that an alleged lack of personal involvement justified summary judgment on the claims asserted by Mr. Vega against Defendants Lantz and Bruno.* See id. at 34-37.

2

This Court granted, in part, the defendants' motion ("Summary Judgment Ruling") [Dkt. No. 188]. The claims left standing after this Court's September 25, 2009 ruling include:

1. Claims seeking injunctive and declaratory relief under RLUIPA, the First Amendment, and the Equal Protection clause against Commissioner Lantz in her official capacity regarding the cancellation of Jumah.

2. Claims seeking money damages, injunctive relief and declaratory relief under the First Amendment and Equal Protection clause against Commissioner Lantz in her individual capacity regarding the cancellation of Jumah.

3. Claims seeking injunctive and declaratory relief under RLUIPA, the First Amendment, and the Equal Protection clause against Commissioner Lantz in her official capacity regarding the denial of Mr. Vega's circumcision request.

4. Claims seeking money damages, injunctive relief and declaratory relief under the First Amendment and Equal Protection clause against Commissioner Lantz in her individual capacity regarding the denial of Mr. Vega's circumcision request.

5. Claims seeking injunctive and declaratory relief under RLUIPA, the First Amendment, and the Equal Protection clause against Commissioner Lantz in her official capacity regarding the mistreatment of the Quran.

6. Claims seeking money damages, injunctive relief and declaratory relief under the First Amendment and Equal Protection clause against Commissioner Lantz in her individual capacity regarding the mistreatment of the Quran.

7. Claims seeking injunctive and declaratory relief under RLUIPA, the First Amendment, and the Equal Protection clause against Commissioner Lantz in her official capacity regarding the availability of toothsticks (miswak).

MEI 9260174v.1

8.  Claims seeking money damages, injunctive relief and declaratory relief under the First Amendment and Equal Protection clause against Commissioner Lantz in her individual capacity regarding the availability of toothsticks.

9.  Claims seeking injunctive and declaratory relief under RLUIPA, the First Amendment, and the Equal Protection clause against Commissioner Lantz in her official capacity regarding nonconforming prayer oils.

10. Claims seeking money damages, injunctive relief and declaratory relief under the First Amendment and Equal Protection clause against Commissioner Lantz in her individual capacity regarding nonconforming prayer oils.

11. Claims seeking injunctive and declaratory relief under RLUIPA, the First Amendment, and the Equal Protection clause against Reverend Bruno in his official capacity regarding the cancellation of Jumah.

12. Claims seeking money damages, injunctive relief and declaratory relief under the First Amendment and Equal Protection clause against Reverend Bruno in his individual capacity regarding the cancellation of Jumah.

13. Claims seeking injunctive and declaratory relief under RLUIPA, the First Amendment, and the Equal Protection clause against Reverend Bruno in his official capacity regarding the denial of Mr. Vega's circumcision request.

14. Claims seeking money damages, injunctive relief and declaratory relief under the First Amendment and Equal Protection clause against Reverend Bruno in his individual capacity regarding the denial of Mr. Vega's circumcision request.

MEI 9260174v.1

15.    Claims seeking injunctive relief and declaratory relief under RLUIPA, the First Amendment, and the Equal Protection clause against Reverend Bruno in his official capacity regarding the mistreatment of the Quran.

16.    Claims seeking money damages, injunctive relief and declaratory relief under the First Amendment and Equal Protection clause against Reverend Bruno in his individual capacity regarding the mistreatment of the Quran.

17.    Claims seeking injunctive and declaratory relief under RLUIPA, the First Amendment, and the Equal Protection clause against Reverend Bruno in his official capacity regarding the availability of toothsticks.

18.    Claims seeking money damages, injunctive relief and declaratory relief under the First Amendment and Equal Protection clause against Reverend Bruno in his individual capacity regarding the availability of toothsticks.

19.    Claims seeking injunctive and declaratory relief under RLUIPA, the First Amendment, and the Equal Protection clause against Reverend Bruno in his official capacity regarding nonconforming prayer oils.

20.    Claims seeking money damages, injunctive relief and declaratory relief under the First Amendment and Equal Protection clause against Reverend Bruno in his individual capacity regarding nonconforming prayer oils.

Id. at 28-34.

With respect to Mr. Vega's claims regarding mishandling of the Quran, denial of a miswak, and denial of circumcision, this Court denied summary judgment because the defendants' motion had failed to address Mr. Vega's claims "in any way". Id. at 31-32. Meanwhile, this Court denied summary judgment on Mr. Vega's cancellation of Jumah claim

5

because the defendants "provide[d] no explanation for the alleged frequent cancellation of Jumah, or for the insufficient and unequal staffing that allegedly underlies it." Id. at 30. Finally, this Court concluded that a dispute of material fact existed as to whether the prayer oils available in the commissary contain chemicals that are prohibited by Islam. Id. at 32.

On October 5, 2009, the defendants filed their Motion for Reconsideration ("Defendants' Motion"). In their accompanying Memorandum of Law in Support of Motion for Reconsideration ("Defendants' Memorandum") [Dkt. No. 191], the defendants appear to assert two grounds for their motion: 1) the Supreme Court in Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937 (2009) set forth a new standard for the personal involvement requirement for claims brought under section 1983 - one which the defendants believe abrogates the five category test set forth by the Second Circuit in Colon v. Coughlin; 2) the Supreme Court in Pearson v. Callahan, __ U.S. __, 129 S. Ct. 808, 815 (2009) modified its earlier decision in Saucier v. Katz, 533 U.S. 194, 121 S. Ct. 2151 (2001) and set forth a new protocol through which judges must evaluate claims of qualified immunity. The defendants claim that these two Supreme Court decisions require granting of the defendants' motion for summary judgment "in its entirety." Defendants' Reconsideration Mem. at 10.

Although styled as a motion for reconsideration, Defendants' Motion does not ask this Court to "reconsider" any aspect of its Summary Judgment Ruling. Because Defendants Lantz and Bruno waited until the instant motion to, *for the first time*, assert any argument regarding the personal involvement doctrine, Defendants' Motion actually seeks an initial ruling by this Court on this issue.

The Defendants' Motion should be denied because it is both procedurally improper and substantively without merit. It is well settled that a motion for reconsideration is not a "second

bite at the apple" or opportunity for a party to assert new legal claims or theories.  The

defendants made no argument, prior to their motion for reconsideration, that challenged the

personal involvement of Commissioner Lantz or Reverend Bruno.  It is improper for them to do

so for the first time on a motion for reconsideration.

Further, the defendants' claims regarding Iqbal and Pearson are substantively meritless.

First, Mr. Vega has presented evidence that supports the conclusion that Commissioner Lantz

and Reverend Bruno had personal involvement, as that term was defined in Iqbal, in the

violations of Mr. Vega's constitutional rights that survived the defendants' Motion for Summary

Judgment.  Second, whether or not Pearson modified Saucier is irrelevant to this case because

this Court did not so much as cite, let alone rely on, Saucier in partially denying the defendants'

Motion for Summary Judgment.

## FACTS RELEVANT TO DEFENDANTS' MOTION

### I.     Defendant Theresa Lantz

Theresa Lantz was the Commissioner of the DOC from 2003 until 2009.[1]  4/24/07 Lantz

Dep. at 25:12-13.  As Commissioner, Defendant Lantz was "responsible for the [DOC's] overall

policies" and reviewed, approved and enforced all administrative directives.  4/24/07 Lantz Dep.

at 57:22-25, 58:1-10, 69:9-10, 133:12-23.  No directive was approved without Commissioner

Lantz's careful review, and Commissioner Lantz did not approve a directive with which she had

any issue or concern.  See 4/24/07 Lantz Dep. at 69:16-25, 70:1-5.  When Commissioner Lantz

deemed that changes were necessary to an administrative directive, those changes were made.

---

[1]  Commissioner Lantz retired on July 1, 2009 while the defendants' Motion for Summary
Judgment was pending.

MEI 9260174v.1

4/24/07 Lantz Dep. at 61:3-6, 61:23-25. A change to the administrative directives could not have been made without Defendant Lantz's approval. 4/24/07 Lantz Dep. at 61:3-6, 61:23-25.

Commissioner Lantz also was directly involved in religious services staffing. Commissioner Lantz admitted to having discussions with, amongst others, Reverend Bruno regarding religious services staffing. 4/24/07 Lantz Dep. at 38:10-25, 39:1-13. She claimed that the DOC, and she in particular, began to more actively recruit Muslim volunteers. 4/24/07 Lantz Dep. at 40:3-24. These actions were the product of Commissioner Lantz's "concerns about ensuring that [the DOC] had adequate staffing" of chaplains and volunteers; concerns that had arisen as a result of cancellations of Jumah. 4/24/07 Lantz Dep. at 42:12-43:1.

Commissioner Lantz further admitted that she received a copy of a letter sent by Reverend Bruno to Mr. Vega regarding the DOC's failure to permit inmates to purchase prayer oils that conformed to Islamic requirements. 4/24/07 Lantz Dep. at 47:10-19. This letter denied Mr. Vega's request that the commissary provide, for sale, prayer oils that conformed to Islamic standards. Plaintiff's Exh. 40, dated 4/24/07. At "around the time of [the] letter", Commissioner Lantz partook in "discussions" with DOC staff regarding Mr. Vega's concerns about the deficient prayer oils available in the commissary. 4/24/07 Lantz Dep. at 48:3-24.

## II.    Defendant Reverend Anthony J. Bruno

Reverend Bruno has been the Director of Religious Services for the DOC since 1999. 7/12/17 Bruno Dep. at 22:25-23:22. In that capacity, Reverend Bruno "is the resource person to the Commissioner for the Department on religious matters, on proposing programs, [and] making recommendations regarding religious issues . . . ." 7/12/09 Bruno Dep. at 23:5-8. Reverend Bruno is the DOC designee for responding to inmate requests concerning religious issues. 7/12/07 Bruno Dep. at 30:9-15. Indeed, Reverend Bruno received - and rejected - concerns

ME1 9260174v.1

expressed by Mr. Vega regarding the composition of the prayer oils sold in the commissary; 7/12/07 Bruno Dep. at 49:19-20, 55:3-9; Plaintiff's Exh. 40, dated 4/24/07; Plaintiff's Exh. 54, dated 7/12/07; the cancellation of Jumah; Plaintiff's Exh. 35, dated 4/5/07; Plaintiff's Exh. 39, dated 4/24/07; and the availability of miswaks. 7/12/07 Bruno Dep. at 42:4-13; Plaintiff's Exh. 36, dated 4/5/07.

Reverend Bruno is responsible for religious staffing. 4/24/07 Lantz Dep. at 41:14-19. As part of this responsibility, Reverend Bruno is charged with recruiting chaplains and volunteers when deemed necessary. 4/24/07 Lantz Dep. at 45:19-24, 7/12/07 Bruno Dep. at 81:3-12. Even though it was Reverend Bruno's responsibility to recruit volunteers to ensure that staffing shortages would not impact the providing of Jumah on a weekly basis, he could not recall having written any letters or having placed any telephone calls seeking volunteers. 7/12/07 Bruno Dep. at 83:18-23.

Reverend Bruno also is responsible for reviewing requests by inmates to purchase religious articles that are not available through the commissary. 7/12/07 Bruno Dep. at 29:3-15. It was Reverend Bruno who rejected Mr. Vega's requests for a miswak and prayer oils that conform to Islamic requirements. 7/12/07 Bruno Dep. at 42:3-13, 49:19-20; 55:3-9; Plaintiff's Exh. 40, dated 4/24/07. Reverend Bruno denied Mr. Vega's requests even though Reverend Bruno previously had granted requests made by Hindus, Wiccans, Native Americans, Rastafarians and Senterians to purchase religious articles outside of those available in the commissary. 7/12/07 Bruno Dep. at 36:13-39:14.

ME1 9260174v.1

## ARGUMENT

I. **Defendants' Motion Has No Impact Upon Mr. Vega's Claims for Declarative and Injunctive Relief.**

The defendants properly limit the scope of their argument regarding Pearson to Mr. Vega's claims for money damages. See Defendants' Mem. at 12. They appear to claim, however, that under Iqbal, this Court should grant summary judgment on Mr. Vega's claims for monetary relief *and* his claims for injunctive and declaratory relief. See id. (requesting their "motion for summary judgment . . . be granted in its entirety"). Such a claim has no basis in the law.

The portion of Iqbal upon which the defendants premise their motion for reconsideration addresses the personal involvement standard required for a plaintiff asserting a 42 U.S.C. § 1983 claim. Id. at 5-9. "It is well settled[, however,] that a defendant's personal involvement in a constitutional tort is not required in a 1983 action *seeking injunctive relief*." Voorhees v. Goord, No. Civ. 1407, 2006 U.S. Dist. LEXIS 48370, at *17 n.1 (S.D.N.Y. Feb. 24, 2006) (emphasis added) (citing Lyerly v. Phillips, 2005 U.S. Dist. LEXIS 15602, 04 Civ. 3904 (PKC), 2005 WL 1802972 at *4 (S.D.N.Y. July 29, 2005) ("[P]ersonal involvement of an official sued in his official capacity is not necessary where the plaintiff is seeking only injunctive or declaratory relief under 42 U.S.C. § 1983.")); Loren v. Levy, No. 00 Civ. 7687 (DC), 2003 U.S. Dist. LEXIS 4903, 2003 WL 1702004 at *11 (S.D.N.Y. Mar. 31, 2003), aff'd without opinion, 120 Fed. Appx. 393 (2d Cir.), cert. denied, 126 S. Ct. 564, 163 L. Ed. 2d 500 (2005) ("Unlike a claim for damages under § 1983, a claim for injunctive relief brought against a state official in his or her official capacity does not require personal involvement on the part of the named official."). Indeed, as McKinnon v. J.W. Patterson, 568 F.2d 930 (2d Cir. 1977) - a case cited by the defendants in their memorandum in support of reconsideration - makes clear, a prisoner may be

entitled to declaratory and injunctive relief with respect to a violation of his constitutional rights, even where he cannot recover monetary damages because of the lack of personal involvement on the part of the defendants.  See id. at 934, 939-40 (affirming district court's grant of declaratory relief while also affirming district court's denial of monetary relief on the basis that defendants were not sufficiently personally involved).

The defendants do not set forth any argument substantiating a claim that Iqbal altered the well settled law that excludes the personal involvement requirement for claims seeking declaratory and injunctive relief.  In fact, neither the majority opinion in Iqbal, nor the operative complaint in Iqbal (which seeks only money damages),[2] indicate that Iqbal impacts claims seeking non-monetary relief in any way.  Accordingly, this Court should deny Defendants' Motion to the extent that it seeks judgment regarding Mr. Vega's claims for injunctive and declarative relief.

## II.    **Defendants' Motion Should Be Denied Because It Is Procedurally Improper.**

"The standard for granting a motion for reconsideration is 'strict.'"  Shrader v. CSX Transp., Inc., 70 F.3d 255, 27 (2d Cir. 1995).  Indeed, only three grounds exist upon which a motion for reconsideration can be granted: "(1) an intervening change in the law; (2) the availability of evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice."  Martin v. Dupont Flooring Sys., No. 3:01 CV 2189 (SRU), 2004 U.S. Dist. LEXIS 9373, at *3 (D. Conn. May 25, 2004).

A motion for reconsideration "is not a vehicle for relitigating old issues, *presenting the case under new theories*, securing a rehearing on the merits, or otherwise taking a 'second bite at

---

[2]    See Iqbal v. Ashcroft, No. 04CV1809(JG)(SMG), Second Amended Complaint, dated 10/20/05 (attached hereto as Exhibit A), at p. 57 (requesting only money damages in Prayer for Relief).

11

the apple.'" Sequa Corp. v. Gbj Corp., 156 F.3d 136, 144 (2d Cir. 1998) (emphasis added).

Thus, where a party seeks reconsideration based upon a legal theory not previously set forth by

the party, the motion for reconsideration should be denied. Securities and Exchange

Commission v. Packet-port.com, Inc., No. 3:05cv1747 (PCD), 2007 U.S. Dist. LEXIS 37774, at

*9-10 (May 23, 2007). A motion for reconsideration, after all, is not "a vehicle to advance new

theories a party failed to articulate in arguing the underlying motion." Johnson v. Killian, No. 07

Civ. 6641 (NRB), 2009 LEXIS 55114, at *2 (S.D.N.Y. June 23, 2009); see also Sequa Corp.,

156 F.3d at 144.

Here, the defendants contend that this Court should grant reconsideration because Iqbal

and Pearson constitute intervening changes in the law of the personal involvement standard and

the doctrine of qualified immunity, respectively. Defendants Lantz and Bruno, however, ignore

the fact that they failed to move for summary judgment based upon the personal involvement

doctrine, with which Iqbal is concerned. The defendants also ignore this Court's ruling denying

them qualified immunity on the remaining claims - a ruling that did not even cite Saucier, which

the defendants contend Pearson modified, but instead was based upon the defendants' failure to

address, in any meaningful way, certain of Mr. Vega's claims. See Summary Judgment Ruling

[Dkt. No. 188] at 30-33. Because the defendants' Motion for Reconsideration is nothing more

than an attempt to "plug gaps in [their] original argument", it is procedurally improper, and must

be denied. Packet-port.com, Inc., 2007 U.S. Dist. LEXIS 3774 at *9-10.

>    **A.    Because Neither the Defendants' Motion for Summary Judgment Nor Their
>    Memorandum in Support Thereof Challenged the Personal Involvement of
>    Commissioner Lantz and Reverend Bruno, the Defendants' Request for
>    Reconsideration Based Upon Iqbal Should Be Denied.**

Nowhere in the defendants' fifty-six page Memorandum in Support of Summary

Judgment [Dkt. No. 147] did they claim that Commissioner Lantz and Reverend Bruno were

12

entitled to summary judgment because they were not "personally involved" in Mr. Vega's claims. Although the defendants devoted four pages of their Summary Judgment Memorandum to challenging the personal involvement of Defendants Robert DeVeau and Imam Abdul Majid Karim Hasan, their Memorandum failed to assert any such claim regarding Commissioner Lantz and Reverend Bruno. Indeed, the defendants' Motion for Reconsideration is the first time that either of the two remaining defendants have asserted lack of personal involvement as a basis of dismissal of Mr. Vega's claims. A motion for reconsideration, however, cannot be used to assert legal theories not previously asserted. Packet-port.com, Inc., 2007 U.S. Dist. LEXIS 37774, at *9-10; Johnson v. Killian, 2009 LEXIS 55114, at *2 (S.D.N.Y. June 23, 2009); Sequa Corp., 156 F.3d at 144. The defendants' Motion for Reconsideration, therefore, should be denied.

**B.      Because This Court's Rejection of the Defendants' Qualified Immunity Claims Was Not Based upon the <u>Saucier</u> Standard, the Defendants' Request for Reconsideration Based Upon <u>Pearson</u> Should Be Denied.**

The Supreme Court's decision in Pearson v. Callahan modified the protocol for courts addressing whether government officials are entitled to qualified immunity. In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court "mandated a two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a constitutional right. Second, if the plaintiff has satisfied the first step, the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." Pearson, 129 S. Ct. at 815-16. Under Saucier, a court reviewing a claim of qualified immunity could not address the second prong until it had concluded that the plaintiff's claim satisfied the first. Id. Pearson loosened the Saucier protocol by granting courts the discretion to address the second prong first if doing so would, for example, conserve the resources of the parties and/or the judiciary. See id. at 818-19.

The <u>Pearson</u> decision is wholly unrelated to this Court's partial denial of the defendants' Motion for Summary Judgment. In permitting Mr. Vega's claim for money damages against Commissioner Lantz and Reverend Bruno in their individual capacities to survive summary judgment, this Court did not apply - nor even cite - the <u>Saucier</u> standard. Instead, this Court concluded that the defendants were not entitled to summary judgment on the five claims left standing because either: 1) the defendants had failed to adequately address the claims (mishandling of the Quran, denial of circumcision request and miswak, cancellation of Jumah); or 2) a dispute of material fact exists precluding summary judgment (prayer oils). <u>See also</u> Plaintiff's Mem. in Opposition to Defendants' Motion for Summary Judgment, dated March 31, 2008 [Dkt. No. 161], at p. 62, n. 33 (noting that the defendants did "not appear to be moving for judgment on the basis of qualified immunity on Mr. Vega's claims in connection with the cancellation of Jumah, the mistreatment of the Quran, failure to provide him with a circumcision, and failure to provide certain Islamic items such as a miswak . . . .").

Thus, although <u>Saucier</u> may be an "intervening change in the law", it is a change that is unrelated to the defendants' Motion for Summary Judgment, and this Court's ruling regarding it. Accordingly, the <u>Pearson</u> decision cannot properly form the basis for a grant of reconsideration. <u>See</u> <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir. 1995) (motion for reconsideration should be denied "unless the moving party can point to controlling decisions . . . *that might reasonably be expected to alter the conclusion reached by the court*.") (emphasis added).

**III.    The Defendants' Motion Should Be Denied Because It Is Substantively Without Merit.**

     **A.    Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).**

In <u>Iqbal</u>, the plaintiff, who had been detained by American officials in the wake of September 11, 2001, sued, amongst others, the former Attorney General and the head of the FBI

14

claiming that they had "adopted an unconstitutional policy that subjected [the plaintiff] to harsh conditions of confinement on account of his race, religion or national origin." Iqbal, 129 S. Ct. at 1942. Specifically, the plaintiff claimed that while detained he was labeled a person of "high interest" to the September 11 investigation, which led to his being placed in a maximum security housing facility and being subjected to "harsh conditions of confinement". Id. at 1939, 1944. The plaintiff claimed that the defendants were the architects of the "policy of holding post-September 11th detainees in highly restrictive conditions of confinement until they were cleared by the FBI"; a policy that the plaintiff claimed was unconstitutionally discriminatory. See id. at 1945.

        In analyzing whether the plaintiff had adequately stated a claim upon which relief could be granted, the court first explained that in section 1983 suits, "a plaintiff must plead that each Government-official defendant, through the officials' own individual actions, has violated the Constitution." Id. at 1948. According to the court, it is not enough that a supervisor merely *knows* that a subordinate has deprived an individual of a constitutional right. Id. at 1949. Rather, the supervisor must have undertaken some constitutional *misconduct*, herself. Id.

        Next, the court noted that certain of the plaintiff's allegations were too conclusory to be entitled to the assumption of truth. Id. at 1951-52. These included that the defendants "knew of, condoned, and willfully and maliciously agreed to subject [the plaintiff] to harsh conditions of confinement . . . solely on account of [his] religion . . . and for no legitimate penological purpose . . . .", that Defendant Ashcroft was the "principal architect" of the policy, and that Defendant Mueller was "instrumental" in the policy's adoption. Id. at 1951. After excluding these inadequate allegations, the remaining allegations in the complaint merely claimed that the defendants had "adopt[ed] a policy approving restrictive conditions of confinement for post-

September 11 detainees until they were cleared by the FBI." Id. at 1944. In other words, the complaint merely alleged that "in the aftermath of a devastating terrorist attack [the defendants] sought to keep suspected terrorists in the most secure conditions available until the suspects could be cleared of terrorist activity." Id. at 1952. Because the complaint did "not show, or even intimate, that [the defendants] purposely housed detainees in the [maximum security facility] due to their race, religion, or national origin", it did not adequately allege a discrimination claim. Id.

**B.      Iqbal Does Not Constitute An Intervening Change in Controlling Law.**

As this Court noted in its Ruling on Defendants' Motion for Summary Judgment, it is unclear what effect, if any, Iqbal has on Second Circuit precedent regarding the personal involvement doctrine. Summary Judgment Ruling [Dkt. No. 188] at 11 n.12. Although the defendants cited a case from the Southern District of New York that apparently interpreted Iqbal as substantially impacting the five category test set forth in Colon v. Coughlin, 58 F.3d 865 (2d Cir. 1995),[3] at least two recent cases - including one from the District of Connecticut - indicate that Iqbal's impact is negligible. For example, in Swain v. Doe, No. 3:04cv1020 (SRU), 2009 U.S. Dist. LEXIS 87802 (D. Conn. Sep. 24, 2009), Judge Underhill laid out the Colon test as the Second Circuit had in Iqbal v. Hasty, 490 F.3d 143, 152 (2007) and indicated that Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) *had reversed the Second Circuit's decision **on other grounds***. Id.

---

[3]    Colon provides in relevant part:
       The personal involvement of a supervisory defendant may be shown by evidence that: (1)
           the defendant participated directly in the alleged constitutional violation, (2) the
           defendant, after being informed of the violation through a report or appeal, failed to
           remedy the wrong, (3) the defendant created a policy or custom under which
           unconstitutional practices occurred, or allowed the continuance of such a policy or
           custom, (4) the defendant was grossly negligent in supervising subordinates who
           committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the
           rights of inmates by failing to act on information indicating that unconstitutional acts
           were occurring.
       Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

ME1 9260174v.1

at *14-15; <u>see also</u> <u>Garcia v. Watts</u>, No. 08 Civ. 7778, 2009 U.S. Dist. LEXIS 84697, at *44-66

(S.D.N.Y. Aug. 27, 2009) (acknowledging <u>Iqbal</u> but nevertheless applying the five category

<u>Colon</u> test and its progeny).

     Furthermore, the case relied upon by the defendants for their contention that <u>Iqbal</u>

abrogated <u>Colon</u> should have no persuasive value for this Court. In <u>Bellamy v. Mount Vernon</u>

<u>Hospital</u>, No. 07 Civ. 1801, 2009 U.S. Dist. LEXIS 54141 (S.D.N.Y. June 26, 2009), the district

court stated that <u>Iqbal</u> "abrogates several of the categories of supervisory liability enumerated in

<u>Colon v. Coughlin</u>." <u>Id.</u> at *27. The district court, however, provided absolutely no analytic

support for its statement. Moreover, the district court's unsubstantiated commentary regarding

<u>Iqbal</u> and <u>Colon</u> apparently was not enough to convince even the district court in <u>Bellamy</u>, as it

went on to apply at least one prong of <u>Colon</u> that it stated <u>Iqbal</u> had abrogated. <u>See id.</u> at *27

(stating that "[o]nly the first and part of the third <u>Colon</u> categories pass <u>Iqbal</u>'s muster"); <u>id.</u> at

*28 (evaluating the plaintiff's claim under the fifth <u>Colon</u> category, deliberate indifference).

The <u>Bellamy</u> court's unsupported throwaway line is in no way binding on this Court, and is not

persuasive in any event.

     Reconciling <u>Iqbal</u> with <u>Colon</u>'s five part test is not difficult. <u>Iqbal</u> explains that a

supervisor's mere knowledge that a subordinate has acted unconstitutionally is insufficient to

attach liability for the unconstitutional act onto the supervisor; instead, the supervisor, himself,

must undertake some constitutional misconduct. Clearly, then, the first and third categories of

<u>Colon</u> are unaffected by <u>Iqbal</u>. <u>Cf.</u> <u>Bellamy</u>, 2009 U.S. Dist. LEXIS 54141, at *27 (conceding

that the "first and part of the third <u>Colon</u> categories pass <u>Iqbal</u>'s muster"). Yet, the second and

fifth prongs of <u>Colon</u> similarly are unaffected because nothing in <u>Iqbal</u> suggests that once a

supervisor knows of an ongoing constitutional deprivation, his failure to remedy that deprivation

does not constitute his own constitutional "misconduct." In other words, nothing in Iqbal stands for the proposition that inaction cannot constitute "misconduct", especially where the defendants, as in this case, had the power to remedy ongoing constitutional violations.

In a similar vein, the fourth category of Colon, which concerns a defendant who was "grossly negligent in her supervision of the correctional officers who committed the constitutional violation", also survives Iqbal. Under the fourth Colon category, the unconstitutional conduct of a subordinate does not *automatically* attach liability to the supervisor, as it would under a theory of respondeat superior. Instead, it is the "misconduct", in the form of "grossly negligent . . . supervision" of the supervisor, who was derelict in her duty, that attaches liability under Colon's fourth prong.

As at least two district courts within the Second Circuit recently have recognized, Iqbal did not substantially alter the law in this Circuit regarding the personal involvement doctrine. Accordingly, it does not constitute an intervening change in the law for the purposes of the defendants' Motion for Reconsideration.

**C.    Mr. Vega's Claims Survive Under Iqbal.**

Setting aside the questions of whether Iqbal constitutes a change in intervening law to warrant reconsideration of this Court's summary judgment ruling and whether the defendants waived any right to rely on Iqbal by not challenging the personal involvement of the remaining defendants in their Motion for Summary Judgment, the relief requested in the defendants' Motion for Reconsideration should be denied because Mr. Vega has presented evidence that both Commissioner Lantz and Reverend Bruno, "through [their] own individual actions, [have] violated" Mr. Vega's rights under the Constitution and RLUIPA. Iqbal, 129 S. Ct. at 1948. For example, both defendants received letters concerning Mr. Vega's prayer oils claim, and both

18

defendants took actions that resulted in the continued deprivation of Mr. Vega's right to obtain prayer oils that conform with his sincerely held religious beliefs. See, e.g., 4/24/07 Lantz Dep. at 47:10-19, 48:3-24 (admitting that she received a letter from Mr. Vega detailing his prayer oils claim and that she thereafter undertook "discussions" related to Mr. Vega's claim - discussions that did not rectify the violation); 7/12/07 Bruno Dep. at 49:19-20, 55: 3-9 (admitting that he drafted a letter rejecting Mr. Vega's request for prayer oils that conformed to his sincerely held religious beliefs). Regarding the cancellation of Jumah, both Commissioner Lantz and Reverend Bruno testified that they were aware of the problem and had concerns regarding the inadequate staffing that had, according to them, caused the repeated cancellation of Jumah. See, e.g., Lantz. Dep. at 40:3-24, 42:10-43:1; 7/12/07 Bruno Dep. at 81:3-12, 83:18-23; see also Plaintiff's Exh. 39, dated 4/24/07. Nevertheless, both defendants failed to implement measures that rectified the problem.

Furthermore, it was Commissioner Lantz who is ultimately responsible for implementing and enforcing the DOC policies that resulted in the deprivation of Mr. Vega's rights. See, e.g., 4/24/07 Lantz Dep. at 57:22-25, 58:1-10, 69:9-10, 133:12-23; cf. Bellamy v. Mount Vernon Hospital, 2009 U.S. Dist. LEXIS 54141, at *28 (dismissing claim against supervisor where plaintiff failed to offer evidence that supervisor "created or contributed to a policy or custom of unconstitutional practices.").[4] As the defendants point out in their Memorandum, certain of these policies may appear non-discriminatory standing alone. Def. Mem. at 4. However, a disputed issue of fact exists as to whether a policy that, for example, only permits "collective religious

---

[4]   Also, unlike the plaintiff in Iqbal, Mr. Vega has alleged - and presented evidence supporting the allegations - that the violations of his rights were brought to the specific attention of Commissioner Lantz, and that Commissioner Lantz took certain actions in response to Mr. Vega's allegations. Compare Part III.C., supra, with Iqbal, 129 S. Ct. at 1951-52 (concluding that the plaintiff's allegations that Attorney General Ashcroft was the "principal architect" of the challenged policy were too conclusory to play a role in the court's analysis).

19

activities" once a week "to the extent that . . . staff and resources permit", discriminates against Muslims when it is combined with a policy that severely restricts the ability of civilian Muslim volunteers to lead Jumah within the DOC's facilities.

Reverend Bruno, meanwhile, drafted detailed letters to Mr. Vega rejecting Mr. Vega's concerns regarding Jumah cancellation and his request for a miswak. Plaintiff's Exh. 36, dated 4/5/07; Plaintiff's Exh. 39, dated 4/24/07; 7/12/07 Bruno Dep. at 42:4-13; cf. Garcia v. Watts, 2009 U.S. Dist. LEXIS 84697, *53 (explaining that "courts in this Circuit have held defendants liable when their involvement extends beyond the mere receipt of letters to providing detailed responses defending the institution or explaining the treatment."). In short, both defendants, although clearly aware of Mr. Vega's claims of ongoing constitutional violations, failed to take corrective actions and, in some circumstances, actively rejected Mr. Vega's attempts to obtain relief. The defendants, therefore, were "personally involved" in Mr. Vega's claimed deprivations.

Bellamy v. Mount Vernon Hospital is not to the contrary. In Bellamy, the plaintiff inmate, Jerome Bellamy, claimed that the Deputy Commissioner and Chief Medical Officer of the New York State Department of Correctional Services, Dr. Lester Wright, had violated Mr. Bellamy's constitutional rights because Mr. Bellamy did not receive the testosterone treatment that he had requested. Bellamy, No. 07 Civ. 1801, 2009 U.S. Dist. LEXIS 54141, at *1-*2 (S.D.N.Y. June 26, 2009). However, although Mr. Bellamy had written letters to the defendant requesting the treatment, the evidentiary record did not demonstrate that Dr. Wright personally had received them. Id. at *6. Further, Mr. Bellamy admitted that Dr. Wright was not personally involved in the responses to Mr. Bellamy's letters and that the parties had "never had any form of contact." Id. at *28. Finally, Mr. Bellamy had offered "no evidence that Wright created or

MEI 9260174v.1

contributed to a policy or custom of unconstitutional practices", or that "Wright was responsible for making any decisions regarding [Mr. Bellamy's] testosterone medications." Id. The district court concluded that Mr. Bellamy had not established Dr. Wright's personal involvement for the purposes of section 1983 money damages liability. Id.

Here, it is undisputed that both defendants received and reviewed letters sent by Mr. Vega concerning his claims. Unlike Dr. Wright, both defendants responded, albeit insufficiently, to Mr. Vega's letters. Further, Mr. Vega has offered evidence establishing that Commissioner Lantz was responsible for the creation, implementation, and enforcement of DOC policies that resulted in the violation of Mr. Vega's rights. The defendants' heavy reliance on the case notwithstanding, Bellamy does not support granting Defendants' Motion or the relief requested therein.

## CONCLUSION

Defendants' Motion does not ask this Court to "reconsider" any aspect of its Summary Judgment Ruling. Instead, Defendants' Motion attacks the Ruling collaterally by asserting legal arguments and theories that the defendants did not make in support of their motion for summary judgment; arguments that also are substantively flawed. Accordingly, Mr. Vega respectfully requests that the Court deny the Defendants' Motion for Reconsideration in its entirety.

ME1 9260174v.1

Dated: November 9, 2009                RESPECTFULLY SUBMITTED,
       Hartford, Connecticut

THE PLAINTIFF,
JOE BURGOS VEGA


By:/s/ Matthew A. Weiner
    Matthew A. Weiner
    Federal Bar No.: ct 27573
    McCarter & English, LLP
    CityPlace I
    185 Asylum Street
    Hartford, Connecticut 06103
    Tel.:  (860) 275-6749
    Fax:  (860) 724-3397
    mweiner@mccarter.com

ME1 9260174v.1

## CERTIFICATION

This is to certify that on the 9th day of November 2009, a copy of the foregoing was

hereby sent electronically to:


Steven R. Strom, Esq.
Assistant Attorney General
Office of the Attorney General
110 Sherman Street
Hartford, Connecticut 06105

*Attorney for the defendants*




                                        /s/ Matthew A. Weiner
                                        Matthew A. Weiner

ME1 9260174v.1