UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOE BURGOS VEGA,                     :
                                     :
        Plaintiff,                   :
                                     :
        v.                           :    CASE NO. 3:04CV1215(DFM)
                                     :
THERESA LANTZ ET AL.,                :
                                     :
        Defendants.                  :


RULING ON MOTION FOR RECONSIDERATION

        The plaintiff, a state prisoner, brings this action against

officials of the Connecticut Department of Corrections ("DOC")

pursuant to 42 U.S.C. § 1983 alleging violations of his rights

under the Free Exercise Clause of the First Amendment and the

Equal Protection Clause of the Fourteenth Amendment.  He also

alleges violations of the Religious Land Use and

Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc.

The remaining defendants are former DOC Commissioner Theresa

Lantz and DOC Director of Religious Services Reverend Anthony J.

Bruno.  (See docs. #95 at 34, #188 at 33.)  Pending before the

court is the defendants' Motion for Reconsideration, doc. #222.

For the reasons that follow, the motion is granted.

I.   Procedural History

        The plaintiff, a practicing Muslim, commenced this action

in July 2004 claiming that the defendants violated his right to

exercise his religion.[1]   (Doc. #1.)   After the court granted the defendants' motion for summary judgment in part (doc. #188), they filed a Motion for Reconsideration with respect to the issue of qualified immunity.   (Doc. #190.)   While the Motion for Reconsideration was pending, the case was administratively closed to facilitate settlement discussions.[2]   (Doc. #203.) After the parties reached a partial settlement, the case was reopened.   (Doc. #209.)   With leave of the court, the defendants renewed their Motion for Reconsideration.   (Doc. #222.)

The three unresolved claims allege that the remaining defendants, former Commissioner Lantz and Reverend Bruno, unlawfully (1) denied the plaintiff's request to be circumcised, (2) denied him access to suitable Islamic prayer oils, and (2) frequently cancelled Friday congregate prayer.   (Docs. #209 and #223.)   The plaintiff seeks injunctive and declaratory relief from the defendants in their official capacities and monetary relief from them in their individual capacities.   In the pending motion, defendants argue that they are entitled to qualified immunity from suit in their individual capacities.

_____

[1]The plaintiff filed his complaint pro se but has been represented by appointed counsel for all purposes relevant to this ruling.   (See doc. #102.)

[2]Magistrate Judge Joan G. Margolis generously devoted many hours to settlement discussions on six separate occasions spanning many months.

II.   Reconsideration

The standard for granting a motion for reconsideration "is strict, and reconsideration generally will be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted).  A "motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."  Id.  "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (citing 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4478, at 790 (1981)).

In this case, reconsideration is appropriate because of an intervening change of controlling law.  At the time of the court's summary judgment ruling, the Supreme Court had mandated a two-step sequence for resolving government officials' qualified immunity claims, which required the court to determine first whether the facts as alleged amounted to a violation of a constitutional right and, only if so, to then determine whether the right was "clearly established."  Saucier v. Katz, 533 U.S.

3

194, 201 (2001).  The Supreme Court has since relaxed the
Saucier mandate to permit the district courts and courts of
appeal "to exercise their sound discretion in deciding which of
the two prongs of the qualified immunity analysis should be
addressed first in light of the circumstances in the particular
case at hand."  Pearson v. Callahan, 555 U.S. 223, 236 (2009).
In light of the change, reconsideration is granted for the
purpose of examining the second Saucier prong to determine
whether the defendants are entitled to summary judgment on the
issue of qualified immunity.

III. Standard of Review

     A party is entitled to summary judgment if the record,
including pleadings, depositions, answers to interrogatories,
admissions and affidavits, establishes that there is no genuine
dispute as to any material fact and that the party is entitled
to judgment as a matter of law.  See Fed. R. Civ. P. 56.  In
seeking summary judgment, a defendant has the initial burden of
showing an absence of evidence to support an essential element
of the plaintiff's claim.  See Celotex Corp. v. Catrett, 477
U.S. 317, 325 (1986).  To overcome this showing, a party
opposing summary judgment "bears the burden of going beyond the
pleadings, and 'designating specific facts showing that there is
a genuine issue for trial.'"  Amnesty Am. v. Town of W.
Hartford, 288 F.3d 467, 470 (2d Cir. 2002) (quoting Celotex, 477

4

U.S. at 324).  The court must view the evidence in the record in
the light most favorable to the non-moving party, drawing all
reasonable inferences in that party's favor.  See Weinstock v.
Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

IV.  Undisputed Facts

The following undisputed facts set forth in the court's
summary judgment ruling are relevant here.  The plaintiff, a
practicing Muslim, is incarcerated at MacDougall Walker
Correctional Institution in Suffield, Connecticut.  The DOC
offers various opportunities to Muslim inmates to practice and
study their religion.  They may attend Islamic study classes and
Arabic language classes, and they have access to books and other
study materials.  Muslim inmates who choose to fast during the
month of Ramadan are accommodated with meals served after
sunset.  Muslim inmates are able to attend two annual feasts
known as the Eids.  Inmates may purchase certain devotional
accessories in the prison commissary, including oils for use in
Muslim prayer.  The plaintiff requested circumcision, and the
defendants denied the request.  There is weekly chaplain-led
congregate prayer for Muslim inmates on Fridays but it has been
cancelled frequently due to unavailability of a chaplain or
volunteer to oversee it.  Collective religious activity is
permitted only under authorized supervision, and inmates are not
permitted to lead collective religious activity.  (Doc. #188.)

It is also undisputed that Defendant Bruno has asked the DOC's Islamic chaplains to help find volunteers to lead Friday congregate prayer in light of the "desperate need" for more Islamic prayer leaders.  To prevent cancellations, Bruno has rotated chaplains and assigned them to lead Friday prayers at more than one facility.  (Bruno Aff., doc. #149, Ex. Q at 80-84.)

V.   Discussion

The plaintiff argues that the defendants violated his rights by denying his request to be circumcised, denying him access to suitable prayer oils, and frequently cancelling Friday congregate prayer.  He seeks inter alia money damages from the defendants in their individual capacities under 42 U.S.C. § 1983.[3]  The defendants assert that they are entitled to qualified immunity in their individual capacities.

A.  Qualified Immunity

The Supreme Court has held that government officials generally are shielded from liability for civil damages unless (1) viewed in the light most favorable to the party asserting the injury, the facts as alleged amount to a violation of a constitutional or statutory right, and (2) the right was "clearly established" at the time of the alleged misconduct.

---

[3]This ruling does not concern plaintiff's § 1983 claims against the defendants in their official capacities for injunctive and declaratory relief.

Saucier v. Katz, 533 U.S. 194, 201 (2001), modified by Pearson

v. Callahan, 555 U.S. 223 (2009) (court may consider Saucier

prongs in any order).  To determine whether a particular right

was clearly established, courts in this circuit consider three

things:

> (1) whether the right in question was defined with
> "reasonable specificity"; (2) whether the decisional
> law of the Supreme Court and the applicable circuit
> court support the existence of the right in question;
> and (3) whether under preexisting law a reasonable
> defendant official would have understood that his or
> her acts were unlawful.

Dean v. Blumenthal, 577 F.3d 60, 68 (2d Cir. 2009) (quoting

Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991)).  If the

record shows violation of a clearly established right, the court

must ask whether "'the evidence is such that, even when it is

viewed in the light most favorable to the plaintiff [ ] and with

all permissible inferences drawn in [his] favor, no rational

jury could fail to conclude that it was objectively reasonable

for the defendant [ ] to believe that [he] [was] acting in a

fashion that did not violate a clearly established right.'"

Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006) (quoting

In re State Police Litig., 88 F.3d 111, 123 (2d Cir. 1996)).  In

other words, officials are entitled to qualified immunity unless

they are "plainly incompetent" or "knowingly violate the law."

Ashcroft v. al-Kidd, -- U.S. --, 131 S. Ct. 2074, 2085 (2011)

(quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

B.  <u>Plaintiff's Claims</u>

    1.  <u>Denial of Circumcision</u>

The plaintiff alleges that since 2001 the defendants unlawfully have denied his requests for circumcision.  The court can find no precedent that suggests — much less clearly establishes — that a prisoner has a constitutional or statutory right to a surgery that is not medically necessary.  <u>Cf.</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-105 (1976) (prisoner has Eighth Amendment right to treatment for "serious" medical needs). Because the plaintiff has no clearly established right to circumcision, the defendants are entitled to qualified immunity from this claim.

    2.  <u>Failure to Provide Suitable Prayer Oils</u>

The plaintiff next alleges that since 2002 he has been prevented from obtaining oils suitable for Islamic devotional use.  The court denied summary judgment on the merits of this claim because a material dispute exists as to whether the oils in the prison commissary contain chemicals prohibited by Islam. (Doc. #188 at 32-33.)  Nevertheless, for the narrower purposes of qualified immunity, it is undisputed that the commissary oils were reviewed and approved for devotional use by Imam Abdul-Majid Karim Hasan, the DOC's Islamic advisor.  (<u>See</u> Statement of Material Facts, doc. #149, Ex. A and B.)  Hasan's approval of the commissary oils was reinforced by a 2001 letter and a 2006

affidavit of purity from Imam Wali W. Rushdan, an Islamic advisor to corrections facilities in Pennsylvania and Delaware. (Id., Ex. I.)

As the Supreme Court has cautioned, an inquiry into whether a right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier v. Katz, 533 U.S. 194, 201 (2001). For an official to lose the protection of qualified immunity "the unlawfulness must be apparent" in light of preexisting law. Anderson v. Creighton, 483 U.S. 635, 640 (1987). See, e.g., Breland v. Goord, No. 94cv3696, 1997 WL 139533, at *7-8 (S.D.N.Y. March 27, 1997) (prison officials were entitled to qualified immunity from Free Exercise claim for confiscating literature they reasonably believed was not religious in nature). Here, even assuming without deciding that the plaintiff had a right to obtain suitable Islamic prayer oils, the defendants could not have imagined that they would violate the alleged right by restricting him to the imam-approved commissary oil. They therefore are entitled to qualified immunity from this claim as a matter of law.

3. Cancellation of Friday Congregate Prayer

Finally, as to the frequent cancellation of Friday congregate prayer, well-settled preexisting law establishes that inmates have a constitutional right to participate in congregate

9

religious services.  Salahuddin v. Coughlin, 993 F.2d 306, 308
(2d Cir. 1993).  However, in some circumstances, administrative
exigencies can outweigh an inmate's right to weekly congregate
prayer, especially where other opportunities for religious
exercise are available.  O'Lone v. Estate of Shabazz, 482 U.S.
342 (1987) (prison officials were not required to excuse Muslim
inmates from work details that sometimes prevented them from
attending Friday congregate prayer).  For example, in Benjamin
v. Coughlin, 905 F.2d 571, 573-74 (2d Cir. 1990), the Second
Circuit held that a complete failure to provide congregate
Rastafarian prayer was justified where the defendants made good
faith but unsuccessful efforts to locate and obtain the services
of a Rastafarian chaplain.  Similarly, in Persad v. Savage, No.
02cv0336, 2004 WL 1570286, at *7 (W.D.N.Y. May 25, 2004),
adopted, 2004 WL 1858140 (W.D.N.Y. Aug. 19, 2004), the district
court held that prison officials were entitled to qualified
immunity for twice cancelling Friday prayer when the regular
Muslim chaplain could not find a vacation substitute.

     The record on summary judgment shows that the DOC assigned
Islamic chaplains to conduct Friday congregate services but
frequently cancelled Friday services when the assigned chaplains
or volunteers were unavailable.  To reduce such cancellations,
the DOC rotated Islamic chaplains to cover shortages, assigned
them to conduct Friday services at more than one facility and

sought their assistance in recruiting more volunteers.  Other opportunities for religious practice were available to Muslim inmates.

The plaintiff argues that this record does not establish that the cancellations were objectively reasonable, citing deposition testimony alleging that the DOC did not try hard enough to enlist more chaplains and volunteers and that it vetted potential volunteers too rigorously.  (Doc. #161 at 25-26, 63.)  See Salahuddin v. Goord, 467 F.3d 263, 275-76 (2d Cir. 2006) (declining to decide qualified immunity because record on summary judgment did not establish that it was objectively reasonable for defendant to believe that he did not violate clearly established right).  However, in light of the DOC's undisputed efforts to rotate and recruit prayer leaders and to provide other opportunities for Islamic religious exercise, it would not have been apparent to a reasonable prison official that it might be unlawful to cancel Friday services due to the unavailability of assigned staff.  Because the defendants were not "plainly incompetent" and did not "knowingly violate the law," Ashcroft v. al-Kidd, -- U.S. --, 131 S. Ct. 2074, 2085 (2011), they are entitled to qualified immunity on this claim.

VI.  Conclusion

For the foregoing reasons, the defendants' Motion for Reconsideration is granted.  The court concludes that former

Commissioner Lantz and Reverend Bruno are entitled to qualified immunity and grants summary judgment in their favor as to the remaining claims for money damages in their individual capacities.  The case shall proceed on the plaintiff's official capacity claims for injunctive and declaratory relief with respect to circumcision, oils and congregate prayer.

This is not a recommended ruling.  The parties have consented to trial before a magistrate judge pursuant to 28 U.S.C. 636(c) and Fed. R. Civ. P. 73.  (See doc. #27.)

SO ORDERED at Hartford, Connecticut this 16th day of November, 2012.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge