UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOE BURGOS VEGA, | : | CIVIL NO. 3:04CV1215 (DFM) |
| Plaintiff, | : | |
| v. | : | |
| THERESA LANTZ, ET AL., | : | |
| Defendants. | : | APRIL 16, 2013 |

**JOINT TRIAL MEMORANDUM**

## I.  TRIAL COUNSEL

Plaintiff's Trial Counsel:

Charles D. Ray, Esq.
McCarter & English
185 Asylum Street
Hartford, CT 06103

Jordan Abbott, Esq.
McCarter & English
185 Asylum Street
Hartford, CT 06103

Defendant's Trial Counsel:

Steven R. Strom
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105
(860) 808-5450

Edward Wilson, Jr.
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105
(860) 808- 5450

## II.  JURISDICTION

Plaintiff invokes the Court's Jurisdiction under 42 U.S.C. § 1983, alleging violations of

his rights under the Free Exercise Clause of the First Amendment and the Equal Protection

Clause of the Fourteenth Amendment.  He also alleges violations of the Religious Land Use and

ME1 15461463v.1

Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc.  The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.  Venue is appropriate in the District of Connecticut pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred in Connecticut.

## III.    <u>JURY TRIAL</u>

This case will be tried to the Court.

## IV.    <u>NATURE OF CASE</u>

Plaintiff, a practicing Muslim, commenced this action in July 2004, claiming that defendants violated his right to exercise his religion under the first amendment and RLUIPA.  On September 25, 2009, the court granted defendants motion for summary judgment in part. (Doc. #188).  On October 4, 2009, the defendants timely filed a motion for reconsideration.  (Doc. #190).  On November 16, 2012, the court issued its ruling, granting defendants reconsideration motion, granting the requested relief, dismissing any and all money damage claims, and dismissing the claims against all defendants in their individual capacities. Presently, there are three claims against the remaining defendants, former Commissioner Lantz and Reverend Bruno in their official capacity for injunctive and declaratory relief.    These claims allege that the defendants unlawfully (1) denied the plaintiff's request to be circumcised, (2) denied him access to suitable Islamic prayer oils, and (3) frequently canceled Friday congregate prayer (Jumu'ah). These claims allege that the defendants unlawfully (1) denied Plaintiff's request to be circumcised in violation of the First Amendment, the Equal Protection Clause and the Religious Land Use and Institutional Persons Act (RLUIPA); (2) denied Plaintiff access to suitable Islamic prayer oils in violation of the First Amendment, the Equal Protection Clause and the Religious Land Use and Institutional Persons Act (RLUIPA); and (3) frequently canceled Friday

2

congregate prayer (Jumu'ah) in violation of the First Amendment, the Equal Protection Clause and the Religious Land Use and Institutional Persons Act (RLUIPA).

## V.   STIPULATIONS OF FACT AND LAW

### FACT

1.     Plaintiff, Joe Burgos Vega is a Connecticut state prisoner and is currently serving a 60 year total effective sentence.

2.     Plaintiff's incarceration began on January 9, 1996 at the age of 28.

3.     Plaintiff converted to Islam around 1993.

4.     Plaintiff has reaffirmed his Muslim faith on at least six occasions since then by way of completing the Department of Corrections' Request for Religious Affiliation.

5.     Plaintiff is currently incarcerated at Cheshire Correctional Institution and has been since June 9, 2010.

6.     DOC policy requires that collective religious activity be conducted and supervised by a department authorized Chaplin or religious volunteer who professes the same religion as the group gathering together. A.D. 10.8¶ 6(B).

7.     DOC policy requires that inmates are not permitted to lead collective religious activities and can never exercise any authority over any other inmate. A.D. 10.8 ¶¶6 (B), 6(D).

8.     DOC policy requires that inmates may not engage in "demonstrative public individual prayer that would disrupt the orderly operation of the institution, such as in the work or school area, recreation area, day room, etc." A.D. 10.8 ¶6 (E).

9.     DOC policy requires that "opportunities for collective religious activities shall be made available on an equitable basis at least once a week, to the various religious denominations." A.D.  ¶6 (A).

10.     DOC policy defines "Religious Articles" as "[a]ny inmate property, other than authorized published materials (i.e., written, audio or video), having spiritual significance, which is used in individual or congregate religious activity."  A.D.  ¶3 (I).

11.     DOC policy requires that inmates "requesting to purchase religious articles not available through the Commissary must receive prior written permission of the Director of Programs and Treatment or designee.  Items ordered without permission shall be considered unauthorized and may be deemed contraband."  A.D. ¶5 (H).

12.     Religious Oils are available for purchase at the Commissary at Cheshire Correctional Institution.

13.     These oils have been reviewed and approved for Muslim use by Imam Abdul Majid Karim Hasan and have been reviewed and approved by the D.O.C.

14.     Since August of 2001, Plaintiff has made numerous requests to be circumcised and each of those requests has been denied by the Department of Corrections.

15.     Circumcision is not a medically necessary surgery for Plaintiff.


**LAW**

**First Amendment**

1.     Under the First Amendment, "[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  Turner v. Safley, 482 U.S. 78, at 89 (1987).  Turner sets forth four factors to be considered in determining whether a prison regulation is reasonably related to legitimate penological interests: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether there

are "alternative means of exercising the right that remain open to prison inmates"; (3) whether accommodation of the asserted constitutional right will "impact . . . guards and other inmates, and . . . the allocation of prison resources generally"; and (4) whether there is an "absence of ready alternatives" versus the "existence of obvious, easy alternatives." Turner, 482 U.S. at 89-91.

**RLUIPA**

2.      "RLUIPA protects inmates by providing that a government shall not 'impose a substantial burden' on the 'religious exercise' of inmates in certain institutions unless the government shows that the burden furthers a compelling governmental interest by the least restrictive means." Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006) (quoting RLUIPA, 42 U.S.C. § 2000cc-1(a)).

3.      "Where a plaintiff adduces evidence sufficient to show that the government practice substantially burdens her religious exercise, the onus shifts to the government to demonstrate that the practice furthers a compelling governmental interest, and that the burden imposed on religion is the least restrictive means of achieving that interest." Jova v. Smith, 582 F.3d 410, 415 (2d Cir. 2009) (citing 42 U.S.C. § 2000cc-2(b)).

**Equal Protection**

4.      The Second Circuit has determined that the Turner standard of reasonableness (set forth above) applies to equal protection claims involving a prisoner's religious exercise. *See* Benjamin v. Coughlin, 905 F.2d 571, 575 (2d Cir. 1990); see also Griffin v. Coughlin, 743 F.Supp. 1006, 1010–11 (N.D.N.Y.1990) (following the Second Circuit's directive and applying *Turner's* four factor reasonableness test to equal protection claims arising in the prison context).

VI.     **PLAINTIFF'S CONTENTIONS**

Mr. Vega brought the claims that form the basis of this case in the First Amended Complaint, filed November 8, 2005 ("Amended Complaint").   As a result of settlement and motion practice, three claims remain in the Amended Complaint wherein, Plaintiff alleges violations of the Free Exercise Clause of the First Amendment and Equal Protection Clause under the United States Constitution, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc.   Mr. Vega, a studied and practicing Muslim, has asserted claims based on the allegations that Defendants:   (a) regularly cancelled or otherwise deprived him of the weekly Muslim congregate Friday prayer service, the Jumu'ah, (third count); (b) unjustifiably denied Plaintiff's religiously-motivated request to be circumcised as required for adult male convert to Islam (ninth count); and (c) effectively denied the purchase of prayer oils that would conform to Islamic requirements (sixth count).   Defendants' actions substantially burden Mr. Vega's exercise of Islam under the free Exercise Clause of the First Amendment and Equal Protection Clause under the United States Constitution, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc.

The first claim involves the repeated and unjustified cancellation of the Friday Jumu'ah Congregational Prayer during the period of 2003 through 2011.   In the Islamic faith, Jumu'ah Friday prayer plays an essential role in the necessary rites for forgiveness of sins.   In the Islamic faith, Friday Jumu'ah prayer results in the expiration of the sins committed.   In the early part of this lawsuit Jumu'ah was cancelled frequently and although the frequency with which it is held has improved in recent years at Plaintiff's facility, the manner in which it is currently conducted does not comport with Mr. Vega's practice of his Islamic faith.   Plaintiff requests an order from

this Court mandating Jumu'ah absent emergency circumstances at any facility in which Plaintiff resides.

The second claim involves the denial of Plaintiff's right to undergo circumcision. Plaintiff has studied Islam extensively and contends that circumcision is one of the signs of a true Muslim, and like the other signs, it is obligatory for the Muslim male to be circumcised at birth or upon conversion.

The third claim involves denying Plaintiff (and other Muslims) the right to purchase essential Halal Islamic Prayer Oils for adorning the body in preparation for the Friday Jumu'ah Congregational Prayer.   Prior to initiating this lawsuit Plaintiff was allowed to order prayer oils of his choosing that complied with his religious beliefs.  However, at present, the vendor that currently supplies these prayer oils at the correctional institution's commissary does not comply with Plaintiff's Islamic beliefs because they contain chemical ingredients that would violate the Islamic faith if brought in contact with Plaintiff's body.  DOC policy permits inmates to request the purchase of items not available to them in the prison commissary and Mr. Vega has made a number of such requests in regard to prayer oils.  All of his requests have been denied.

As to each claim, Plaintiff seeks declaratory and injunctive relief. Defendants have denied the allegations of the Complaint.

## VII.    DEFENDANT'S CONTENTIONS

The defendants respectfully contend that the only issues which are relevant are those issues which pertain to plaintiff's present confinement at Cheshire CI, in light of the present procedural posture of the case, which only seeks injunctive relief.  Defendants object to plaintiff's attempt to broaden the scope of this case to issues which existed in 2006 – 2007, at MacDougall-Walker CI, or at Garner CI in 2008-2009, or while plaintiff was briefly at Corrigan CI and also at Northern

CI in 2010, prior to plaintiff's June 9, 2010, transfer to Cheshire CI.  In the defendants' view, going into such past history would unnecessarily broaden the scope of the evidence and lengthen the trial, and would embroil the Court in a variety of collateral issues related to plaintiff's disciplinary reports, and behaviors which led to his transfer to Northern CI, for example, or his disciplinary history while at MacDougall-Walker CI, and would not be helpful to the Court in deciding the issues as they pertain to today's present circumstances.

The defendants respectfully contend that any cancellations of Jumah, are relatively infrequent, and were related to the compelling interests of safety and security and were the only option available to the defendants with regard to safely providing congregate worship services. To the extent there are any burdens or obligations imposed on Muslims by virtue of circumstances beyond their control, and Muslims cannot go to Jumah, for whatever reasons, the prayer obligation can be made up by individual prayer. The cancellations which may have occurred were beyond the control of the defendants, and were applied in a completely content neutral fashion, and apply equally and evenhandedly to all religious faith groups who have collective activity. In addition there are other abundant opportunities to practice one's Muslim faith while incarcerated.

With regard to Islamic prayer oils, the defendants contend that they are completely optional. Even if no oils were allowed, there would be no significant burden on the practice of one's Muslim faith. The denial of oils is a de minimis burden on the practice of religion. However, the oils which are provided are acceptable for use as religious oils by Muslims. Indeed, they have recently received Halal certification.

Lastly, plaintiff's claim to be circumcised is not only unprecedented, but its denial is not a significant burden on the practice of the Muslim religion. As the evidence will show,

8

circumcision is completely optional, and to allow such a procedure would open the floodgates to a variety of elective, non-medically necessary procedures based on an inmates alleged "religious" belief, for example, a religiously motivated request to get a particular tattoo or body part pierced for religious reasons. There is no authority under the first amendment or RLUIPA for the taxpayers to shoulder such costly affirmative obligations, even if the court were to credit plaintiff's belief as being sincerely religiously motivated.

## VIII.   <u>LEGAL ISSUES</u>

### 1.   **Jumu'ah**

Whether the frequent cancellation of Jumu'ah from 2003 to the present and/or the manner in which Jumu'ah is currently conducted at Cheshire violates the Religious Land Use and Institutionalized Persons Act ("RLUIPA", 42 U.S.C. § 2000cc), the First Amendment, and/or the Equal Protection clause and entitles Plaintiff to declaratory and/or injunctive relief.

### 2.   **Circumcision**

Whether Defendants' denial of Plaintiff's request to be circumcised for religious reasons violate the Religious Land Use and Institutionalized Persons Act ("RLUIPA", 42 U.S.C. § 2000cc), the First Amendment, and/or the Equal Protection clause and entitles Plaintiff to declaratory and/or injunctive relief.

### 3.   **Prayer Oils**

Whether the Department of Correction's failure to allow Plaintiff to obtain oils that conform to his religious beliefs violates his rights under RLUIPA, the First Amendment and/or the Equal Protection clause and entitles Plaintiff to declaratory and/or injunctive relief.

## IX.   <u>VOIR DIRE QUESTIONS</u>

Not applicable.

## X.   LIST OF WITNESSES

### A.   PLAINTIFF

1.     **Joe Burgos Vega**, Cheshire Correctional Institution, 900 Highland Avenue, Cheshire, CT 06410.  Mr. Vega will testify as to the facts that form the basis of his claim.

2.     **Father Anthony Bruno**, Director of Religious Services, 24 Wolcott Hill Road, Wethersfield, CT.  Father Bruno is expected to testify as a fact witness in this case.  He is expected to testify as to events and policies surrounding Plaintiff's claims in this case, as well as his own efforts to obtain adequate staffing to attend to the religious needs of Islamic inmates.

3.     **Dr. Imam Hasan**, 870 Dixwell Ave., Hamden, CT. Dr. Iman Hasan will testify as a fact witness based on his experience in the Department of Correction.  He will testify about the facts of this case as they relate to his position and duties as a consultant to the DOC, and the policies and procedures of DOC as they relate to the inmates incarcerated at Cheshire, and specifically the plaintiff.

4.     **Abdullah Antepli**, Muslim Chaplain, Duke University.  Imam Abdullah will testify by way of deposition transcript.  He will describe his background as head of the chaplain program at Hartford Seminary and efforts made by himself and organizations to which he belonged to reach out to the DOC to attempt to alleviate shortages of Islamic chaplains within the DOC.  Imam Antepli will testify that he did not feel that those outreach efforts were welcomed by the DOC.  Imam Antepli will also testify about his own volunteer services in the DOC.

5.     **Bilal Ansari**, Former Islamic chaplain for the Connecticut Department of Correction and currently Muslim Chaplain at Williams College.  Imam Ansari is a former chaplain for the DOC and will testify regarding his experiences in that role and regarding the

frequency and reasons for the cancellation of Jumu'ah during the pendency of this matter. Imam Ansari will also testify regarding the shortage of Islamic chaplains within the DOC and efforts made by the DOC to alleviate those problems. Imam Ansari will also testify about the conditions within the DOC related to the treatment of Muslims and lack of accommodations for the practice of the essential elements of the Islamic faith.

6.    **Imam Glen Sullivan (a/k/a Askia Muhammad)** [retired] [contact information was last used in 2007], 86 St. James Ave., Springfield, Mass. 01109 Phone: (413) 736-8874; Email: saifuhuda@aol.com. Imam Sullivan will offer testimony regarding the lack of staffing for Jumu'ah which has been an issue that has plagued the DOC for many years. He will also authenticate his signature on two exhibits.

7.    **Daniel Markle**, Markle Investigations, Inc., P.O. Box 502, North Haven, CT 06473. Mr. Markle is a private investigator who will testify, if at all, concerning his efforts to locate and serve subpoenas on potential witnesses for Mr. Vega, including Abdullah Antepli, Bilal Ansari, and Glen Sullivan.

**B.    DEFENDANTS**

1.    **Brian K. Murphy**, retired Acting Commissioner of the Connecticut Department of Correction, current Warden at the Wyatt Detention Facility, 950 High Street, Central Falls, RI 02863. Mr. Murphy is expected to testify as both a fact and expert witness. Mr. Murphy has been disclosed as an expert witness in this case, under date, April 20, 2007. An expert disclosure and report were filed on this same date. Mr. Murphy will offer factual and expert testimony consistent with this aforementioned disclosure and events occurring since report.

2.    **Father Anthony Bruno**, Director of Religious Services, 24 Wolcott Hill Road, Wethersfield, CT. Father Bruno is expected to testify as both a fact and expert witness in this

case.  Father Bruno has been disclosed as an expert in this case, under date of May 18, 2007. Father Bruno will offer factual and expert testimony consistent with the aforementioned disclosure as well as events occurring after report and the present day circumstances pertaining to the Plaintiff.  Father Bruno will testify to his background, training and experience in the Department of Correction (DOC); he will testify as to the legitimate penological purposes of the regulations, directives, policies and practices at issue in this case; and he will testify as to the facts relating to the claims alleged by the plaintiff.  He will deny and defend against any and all allegations of wrongdoing.

3. **James Dzurenda**, Deputy Commissioner, 24 Wolcott Hill Rd., Wethersfield, CT. Deputy Dzurenda is expected to testify as both a fact and expert witness in this case.  Deputy Commissioner Dzurenda will testify to his background, training and experience in the Department of Correction (DOC); he will testify as to the legitimate penological purposes of the regulations, directives, policies and practices at issue in this case as well as the facts relating to the issues before the court.  In addition to his knowledge and experience, he will also rely and offer testimony consistent with the previous disclosed expert reports of Brian Murphy.  He will deny and defend against any and all allegations of wrongdoing.

4. **Chaplain Rene Keida**, present Religious Facility Coordinator at Cheshire CI, 900 Highland Ave., Cheshire, CT.  Chaplin Keida will testify to his background, training and experience in the Department of Correction (DOC); he will testify as to the legitimate penological purposes of the regulations, directives, policies and practices at issue in this case; he will deny and defend against any and all allegations of wrong doing.

5. **Imam Wali Rushdan Sr.**; Muslim Center of Wilmington, 550 S. DuPont Highway, New castle, DE 19720. Imam Rushdan will testify as to his background training and

experience. He will testify along the lines of his affidavit that all manufacturing and products for Prime Products, the oils available in the DOC commissary, have been approved and the oils are considered Halal. The oils do not contain any alcohol or animal by-products and are approved for use during Muslim religious services. Imam Rushdan will also testify that the oils are optional and that the denial of oils is not a significant  burden on the practice of the Muslim religion.

6.      **Dr. Imam Hasan**, 870 Dixwell Ave., Hamden, CT. Dr. Iman Hasan will testify as an expert, based on his more than 30 years of delivering Islamic services to inmates in prison; he will testify to his background, training and experience, both in the study of Islam, as a resident Imam of the Abdul Majid Karim Hasan Islamic Center, and his experience in the Department of Correction as well as other correctional systems; he will testify as to the legitimate penological purposes of the regulations, directives, policies and practices at issue in this case, and how they relate to the Islamic practices at issue in this case.  He will testify about the facts of this case as they relate to his position and duties as an expert consultant to the DOC, the policies and procedures of DOC as they relate to the inmates incarcerated at Cheshire, and specifically the plaintiff.  He will deny and defend against any and all allegations of wrongdoing.  His opinions will include, but are not limited to the opinions expressed in his expert report dated July 25, 2007 (Defendants' Exhibit 503) previously disclosed to the plaintiff.  Dr. Imam Hasan was deposed in this case and his opinions will amply demonstrate that there is no burden on plaintiff's practice of religion and that Islam is a flexible religion that can adapt to the rules, policies and procedures of the DOC.  He will further testify that none of the defendants in any way infringed on plaintiff's free exercise of his religion without legitimate and reasonable objectives in the prison setting.

7.      **Aly Ghanim,** Islamic Society of the Washington Area (ISWA), Halal

Certification Department, 1712 Eye Street, NW Suite 602, Washington, DC 20006, USA.  Mr.

Ghanim will testify as to the Halal certification process and will authenticate the Islamic (Halal)

Certificate issued in regards to Prime Products USA, Inc. certifying that the oils do not contain

any haram (impermissible) items (pork or alcohol) and are suitable for Muslim use.


XI.    **EXHIBITS**

A.    **PLAINTIFF**

| **DESCRIPTION** | **PARTIES AGREE TO ADMISSION** | **OBJECTION** | **BASIS FOR ADMISSION** | **BASIS OF OBJECTION** |
|---|---|---|---|---|
| **JUMU'AH** | | | | |
| 1.    State of Connecticut Department of Correction Administrative Directives 10.8 effective 1/31/2005 | JOINT | | | |
| 2.    State of Connecticut Department of Correction Administrative Directives 10.8 effective 6/15/2011 | JOINT | | | |
| 3.    Dates of No Jumah Services (December 2006 through June 2011) Handwritten by Plaintiff | | X | Relevant to Jumu'ah claim | Hearsay, lack of foundation, unreliable, irrelevant |
| 4.    Dates of No Jumah Services (December 2006 through June 2011) Typed by Plaintiff's Counsel | | X | Relevant to Jumu'ah claim | Double hearsay, lack of foundation, unreliable, irrelevant |
| 5.    J. Vega Inmate Grievance Form A, Level 1 dated January 27, 2003 (Corrigan) and attached | | X | Relevant to Jumu'ah claim | Hearsay, unreliable, irrelevant |

14

| | | | |
|---|---|---|---|
| letter to Deputy Warden | | | |
| 6.    Fax dated January 28, 2003 from Rev. Elder to Rev. Bruno  with memo attached; fax dated January 29, 2003 from Bruno to Hasan forwarding same materials. | X | Relevant to Jumu'ah claim | Hearsay, unreliable, irrelevant |
| 7.    J. Vega Inmate Request Form dated November 11, 2003 (Garner) and response from Rev. Calabrese | X | Relevant to Jumu'ah claim | Hearsay, unreliable, irrelevant |
| 8.    J. Vega Inmate Request Form dated January 6, 2004 (Garner) and response from Islamic coordinator Kenneth Muhammed | X | Relevant to Jumu'ah claim | Hearsay, unreliable, irrelevant |
| 9.    J. Vega Inmate Grievance Form A, Level 1 dated September 28, 2004 (Corrigan) | X | Relevant to Jumu'ah claim | Hearsay, unreliable, irrelevant |
| 10.   January 11, 2006 email from Maria Gugliemli to Bruno | X | Relevant to Jumu'ah claim | Hearsay, irrelevant |
| 11.   Fax dated October 17, 2006 from Keida to Bruno containing J. Vega Inmate Request Form dated October 16, 2006 | X | Relevant to Jumu'ah claim | Hearsay, irrelevant |
| 12.   October 26, 2006 Fax containing J. Vega Inmate Request Form dated October 22, 2006 and Response from Capt. S. Frey dated October 25, 2006 | X | Relevant to Jumu'ah claim | Hearsay, irrelevant |
| 13.   Correspondence dated November 2, 2006 from | X | Relevant to Jumu'ah | Vega letter is hearsay, |

ME1 15461463v.1

| | | | claim | irrelevant |
|---|---|---|---|---|
| Rev. Bruno to J. Vega responding to attached correspondence from J. Vega to T. Lantz dated October 8, 2006 and from J. Vega to Rev. Bruno dated October 22, 2006 | | | | |
| 14.   Email dated November 8, 2006 from Bruno to J. Vega | | X | Relevant to Jumu'ah claim | Irrelevant, immaterial |
| 15.   J. Vega Inmate Grievance Form A, Level 1 dated received by DOC on October 31, 2006, with attached Grievance Routing Slip dated November 16, 2006 | | X | Relevant to Jumu'ah claim | Hearsay, irrelevant |
| 16.   November 9, 2006 memo from Bruno to Mary Marcial | | X | Relevant to Jumu'ah claim | Irrelevant |
| 17.   April 16, 2007 email from  Bruno to Lantz re: volunteers | | X | Relevant to Jumu'ah claim | Irrelevant |
| 18.   May 2, 2007 memo from Bruno to Marcial | | X | Relevant to Jumu'ah claim | Irrelevant |
| 19.   May 9, 2007 memo from Bruno to Mary Marcial re: number of jumuahs needed per facility | | X | Relevant to Jumu'ah claim | Irrelevant |
| 20.   June 1, 2007 memo from Bruno to Marcial | | X | Relevant to Jumu'ah claim | Irrelevant |
| 21.   August 4, 2008 Memorandum from Rev. Bruno to M. Marcial Re: Increased Islamic Chaplain Hours | | X | Relevant to Jumu'ah claim | Irrelevant |

| | | | |
|---|---|---|---|
| 22.   January 16, 2009 Memorandum from Rev. Bruno to M. Marcial Re: Reduction in Religious Services Budget | X | Relevant to Jumu'ah claim | Irrelevant |
| 23.   June 2, 2009 Memorandum from Rev. Bruno to M. Marcial Re: Three Chaplain Positions | X | Relevant to Jumu'ah claim | Irrelevant |
| 24.   February 17, 2010 Request for Exception to an Administrative Directive signed by Rev. Bruno | X | Relevant to Jumu'ah claim | Irrelevant |
| 25.   March 30, 2010 letter from Bruno to Dan Callahan | X | Relevant to Jumu'ah claim | Irrelevant |
| **CIRCUMCISION** | | | |
| none | | | |
| **PRAYER OILS** | | | |
| 26.   Plaintiff's Handwritten List of Vendors Of Muslim Prayer Oils | X | Relevant to prayer oil claim | Hearsay, unreliable, irrelevant |
| 27.   Plaintiff's Handwritten List of Vendors Of Muslim Prayer Oils Transcribed by Plaintiff's Attorney | X | Relevant to prayer oil claim | Double hearsay, unreliable, irrelevant |
| 28.   November 3, 2000 letter from Bruno to Vega | X | Relevant to prayer oil claim | Irrelevant |
| 29.   March 16, 2001 letter from Deputy Commissioner Tokarz to J. Vega | X | Relevant to prayer oil claim | Irrelevant |
| 30.   April 19, 2001 Memorandum from Rev. Bruno Re: Religious | X | Relevant to prayer oil claim | Irrelevant |

ME1 15461463v.1

| Articles in Commissary | | | | |
|---|---|---|---|---|
| 31.  March 8, 2002 letter from Deputy Commissioner Tokarz to J. Vega | | X | Relevant to prayer oil claim | Irrelevant, incomplete (missing affidavit) |
| 32.  J. Vega Inmate Grievance Form A, Level 1 dated January 12, 2004 with attachments and response | | X | Relevant to prayer oil claim | Hearsay, unreliable, irrelevant |
| 33.  J. Vega Inmate Grievance Form B, Levels 2 and 3 dated January 27, 2004 and February 3, 2004 response thereto | | X | Relevant to prayer oil claim | Hearsay, unreliable, irrelevant |
| 34.  January 1, 2006 J. Vega Request approval to purchase a non-commissary religious item | | X | Relevant to prayer oil claim | Hearsay, irrelevant |
| 35.  J. Vega Inmate Request Form dated April 13, 2006 | | X | Relevant to prayer oil claim | Hearsay, irrelevant, inadmissible opinion  from non expert |
| 36.  October 26, 2006 correspondence from Rev. Bruno to J. Vega with attached J. Vega October 22, 2006 Request to purchase religious items | | X | Relevant to prayer oil claim | Hearsay |
| 37.  Bid Proposal of Prime Products, USA, Inc. dated February 28, 2011 | JOINT | | Relevant to prayer oil claim | |
| 38.  Contract Between the State of Connecticut and Prime Products USA, Inc. dated April 1, 2011 | JOINT | | Relevant to prayer oil claim | |

**B.     DEFENDANT**

501          Administrative Directive 10.8; Religious Services.

- Admitted without objection.

502          CV and Biographical Summary for Dr. Abdul Majid Karim Hasan

- Admitted without objection.

503          Expert report of Dr. Imam Hasan; (to the extent those portions relate to the remaining issues in the case re: Jumah, oils, and circumcision).

- Admitted without objection as to portions relevant to issues remaining in the case.

504          CV of former Commissioner Brian K. Murphy

- Admitted without objection.

505          Expert report of Brian K. Murphy

- Admitted without objection as to portions relevant to issues remaining in the case.

506          CV of Rev. Anthony J. Bruno

- Admitted without objection.

507          Expert report of Anthony Bruno

- Plaintiff is filing a motion in limine to object to the content involving opinions on Islam.

508          CV of James E. Dzurenda-Admitted without objection.

509          February 21, 2001, letter from Iman Wali W. Rushdan to Correctional Officials

- Plaintiff objects on the grounds of hearsay and lack of foundation if Iman Wali W. Rushdan is not available to testify at trial.

- Defendant's will be calling Iman Wali W. Rushdan as a witness.

510     April 28, 2006, letter from Iman Wali W. Rushdan to Correctional Officials

- Plaintiff objects on the grounds of hearsay and lack of foundation if Iman Wali W. Rushdan is not available to testify at trial.

- Defendant's will be calling Iman Wali W. Rushdan as a witness.

511     2009, letter from Iman Wali W. Rushdan to Correctional Officials

- Plaintiff objects on the grounds of hearsay and lack of foundation if Iman Wali W. Rushdan is not available to testify at trial.

- Defendants will be calling Iman Wali W. Rushdan as a witness.

512     2012, letter from Iman Wali W. Rushdan

- Plaintiff objects on the grounds of hearsay and lack of foundation if Iman Wali W. Rushdan is not available to testify at trial.

- Defendant's will be calling Iman Wali W. Rushdan as a witness.

513     Islamic (Halal) Certificate (Valid April 2013 through April 2014)

- Plaintiff objects on the grounds of hearsay and lack of foundation.

- Defendant asserts that this proposed evidence is relevant to the oils claim.

514     Fax correspondence from Prime Products to Father Anthony Bruno dated January 17, 2013.

- Plaintiff objects on the grounds of hearsay and lack of foundation.

- Defendant asserts this proposed evidence is relevant to the oils claim and formed part of the basis by which the individuals on the religious oil committee at D.O.C. reached a conclusion that the proposed oils were appropriate for religious use.

20

515        Jumah Schedule June 25, 2010, through March 29, 2013.

- Plaintiff objects on the grounds of hearsay.

- Defendant asserts that this proposed evidence is relevant to the Jumah claim.

## XII.   DEPOSITION TESTIMONY

### A.   PLAINTIFF

1.      Deposition of Imam Abdullah Antepli – Imam Antepli is expected to testify by deposition at trial.  Plaintiff proposes to read the following portions of Imam Antepli's deposition at trial:  p.5 (14-25); p.6 (1-6); p.7 (2-4 & 23-25); p.8 (1-2); p.9 (4-19); p.10 (9-15); p.11 (21-25); p.12 (1-6); p.15 (8-13); p.16 (13-25); p.17 (1-3, 14-15 & 19-25); p.18 (1-25); p.19 (1-17); p.22 (21-25); p23 (1-12); p.24 (5-11 & 14-25); p.25 (1-2 & 5-19); p. 26 (11-23); p.27 (24-25); p.28 (1-9 & 15-25); p.29 (1-25); p.30 (1-25); p.31 (1-6 & 18-25); page 32 (1-10); p.46 (5-25); p.47 (1-2); p.55 (1-25); p.56 (1-5, 7-11 & 19-25); p.57 (1-2 & 4-6); p.58 (4-7); p.60 (24-25); p.61 (1-12 & 15-21); p.63 (10-16); p.65 (2-25); p.66 (1); p.77 (17-25); p.78 (1-25); p.79 (1-3 & 6-9); p.80 (6-15); p.85 (25); p.86 (1-15); p.89 (10-25); p.90 (1-11); p.91 (16-25); and p.92 (1-20).

Defendants object to all of the designated testimony from Imam Antepli and are filing a motion to preclude such testimony.

### B.   DEFENDANT

Not applicable

## XIII.   REQUESTS FOR JURY INSTRUCTIONS

Not applicable.

## XIV.   ANTICIPATED EVIDENTIARY PROBLEMS

### A.   PLAINTIFF

Scope of testimony pending resolution of motions in limine.

**B.    DEFENDANT**

Scope of testimony pending resolution of motions in limine. Defendants object to a vast number of plaintiff's proposed exhibits as hearsay, and as being irrelevant.

**XV.    PROPOSED FINDINGS AND CONCLUSIONS**

**A.    Plaintiff's Proposed Findings of Fact**

1.    Plaintiff has been a religiously observant Muslim since his conversion in 1993.  In 1993, Mr. Vega declared his "shahada" signifying his conversion to the Islamic faith.  The shahada is a declaration of faith to become a Muslim.

2.    Mr. Vega derives his sincerely-held religious beliefs from the Quran, Hadiths, and the Sunnah.  Hadiths are writings that explain the Quran and contain the "approvals, the denials, the instructions, the example, of" the Prophet Muhammad.  The Sunnah refers specifically to the life example of the Prophet Muhammad.  Following the Sunnah is essential to the practice of Islam.

3.    Plaintiff is able to read and write in Arabic.

4.    Plaintiff holds sincere religious beliefs that requires all Muslim males to be circumcised; that requires all Muslims to attend a Friday Jumu'ah  congregant prayer service; and that requires all Muslims to adorn themselves with Halal prayer oils to participate in the Jumu'ah  prayer service.

5.    Plaintiff's beliefs are consistent with widespread Islamic practices.

**Cancellation of Jumu'ah**

1.    Between 2003 and 2006, Plaintiff filed numerous grievances regarding the cancellation - without cause - of the weekly Jumu'ah  service.

6.      A Jumu'ah  is a Muslim collective prayer service that occurs each Friday and typically last about one hour.

7.      Jumu'ah  is an obligatory practice in Islam.

8.      The Jumu'ah  prayer cannot not be done or made up for by praying individually.

9.      The Islamic faith prohibits a Muslim from missing three consecutive Jumu'ahs.

10.     If a Muslim misses three consecutive Jumu'ahs, he or she is taken out of the "fold of Islam" and is required to retake the declaration of faith or the shahada.  Put another way, missing three Jumu'ahs in a row is a "huge major sin."

11.     Mr. Vega has missed three consecutive Jumu'ahs on more than one occasion.

12.     There are simply not enough Islamic chaplains and volunteers in the DOC to allow for consistent Jumu'ah services.  In Islam, chaplains are not allowed to perform more than one Jumu'ah on the same day.  If the chaplain has to for some reason, the performance of more than one Jumu'ah can only be temporary.

13.     In July 2007, there only were approximately 12 approved Muslim volunteers.

14.     By contrast there were approximately 300 Protestant volunteers in 2007.

15.     Chaplain Ashraf had to perform multiple Jumu'ahs for <u>five years</u> due to the shortage of approved Islamic leaders.  Further, the DOC was in a state of Islamic "emergency coverage" for at least six months wherein Jumu'ahs were missed with regularity.  Defendants have made the Islamic requirement that a Muslim cannot miss more than three consecutive Jumu'ahs the norm because of the lack of staffing.

16.     The shortage of chaplains and volunteers is not due to the availability of qualified individuals; rather the DOC has failed to hire those qualified individuals.

ME1 15461463v.1

17. For the period of 2002-2006, Islamic volunteers and chaplains never felt the welcome from the system to establish a stronger relationship between the Muslim volunteer community and the DOC.

18. There are currently no measures in place to prevent the facility where Plaintiff resides from cancelling three or more Jumu'ahs in a row.

**Restriction of Ability to Obtain Islamic Prayer Oils**

1. The use of oils for religious prayer is part of the Sunnah.

2. It is Plaintiff's belief that his religion obligates him to use prayer oils that do not contain chemicals.

3. At certain times, Plaintiff was allowed to purchase Islamic prayer oils of his choosing that were in conformity with his religious beliefs.

4. The oils currently sold in the commissary are sold by one vendor.

5. These oils are not approved Islamic oils because they contain chemicals which are prohibited for use by Muslims.

**Denial of Islamically Mandated Circumcision**

1. Mr. Vega has made a religiously-based request for a circumcision.

2. Mr. Vega believes in the obligation of circumcision for adult male converts to the Islamic faith.

3. Circumcision is an essential practice for every Muslim.

4. Imam Hasan, and others, have recognized the legitimacy of Mr. Vega's request for a circumcision within the context of the Islamic faith.

5. Mr. Vega believes that failure to obtain a circumcision is a major sin in Islam.

**B.    Plaintiff's Proposed Conclusions of Law**

24

**Religious Land Use and Institutionalized Persons Act ("RLUIPA")**

1.      RLUIPA guarantees a right to engage in religious practices that includes "any exercise of religion, *whether or not compelled by, or central to*, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A) (emphasis added); see also Westchester Day School v. Village of Mamaroneck, 504 F.3d 338, 347 (2d Cir. 2007) (stating "[t]o remove any remaining doubt regarding how broadly Congress aimed to define religious exercise, RLUIPA goes on to state that the Act's aim of protecting religious exercise is to be construed broadly and to the maximum extent permitted by the terms of this chapter and the Constitution").

2.      RLUIPA prohibits the government from "impos[ing] a substantial burden on the *religious exercise* of a person residing in or confined to an institution."  42 U.S.C. § 2000cc-1(a)(1)-(2) (emphasis added).

3.      If a policy substantially burdens an inmate's religious exercise, RLUIPA requires that the burden be applied in furtherance of a compelling governmental interest and that the burden be the least restrictive means of meeting that interest. 42 U.S.C. § 2000cc-1(a).

4.      The establishment of a RLUIPA claim involves the consideration of four elements.  Spratt v. Rhode Island Dept. of Corrections, 482 F.3d 33, 38 (1st Cir. 2007).  Mr. Vega has the burden of demonstrating the first two elements:  "(1) that an institutionalized person's religious exercise has been burdened and (2) that the burden is substantial."  Id.  After Mr. Vega establishes these two elements, "the onus shifts to the government to show (3) that the burden furthers a compelling governmental interest and (4) that the burden is the least restrictive means of achieving that compelling interest."  Id.

5.       A substantial burden exists where substantial pressure is placed on an adherent to modify his behavior and to violate his beliefs.  <u>Spratt v. Rhode Island Dept. of Corrections</u>, 482 F.3d 33, 38 (1st Cir. 2007).

6.       A substantial burden exists where an individual is forced by the state to choose between abandoning his religion and forfeiting benefits.  <u>Westchester Day School v. Village of Mamaroneck</u>, 504 F.3d 338, 348 (2d Cir. 2007).

**First Amendment**

1.       Under the First Amendment, "[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  <u>Turner</u>, 482 U.S. 78, at 89 (1987).  <u>Turner</u> sets forth four factors to be considered in determining whether a prison regulation is reasonably related to legitimate penological interests: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether there are "alternative means of exercising the right that remain open to prison inmates"; (3) whether accommodation of the asserted constitutional right will "impact . . .  guards and other inmates, and . . . the allocation of prison resources generally"; and (4) whether there is an "absence of ready alternatives" versus the "existence of obvious, easy alternatives."  <u>Turner</u>, 482 U.S. at 89-91.

2.       A burdened practice need not be mandated by an inmate's religion in order to sustain her free exercise claim.  <u>McEachin v. McGinnis</u>, 357 F.3d 197, 203 (2d Cir. 2004).

3.       Under Second Circuit jurisprudence, when considering a First Amendment claim, the court should examine whether the practice is religious in nature and whether the person's religious belief is sincerely held; whether the challenged practice of prison officials impinge on

26

this belief; and whether the challenged practice furthers some legitimate penological objective. Farid v. Smith, 850 F.2d 917, 926 (2d Cir. 1988).

4.      If a prison official's practice infringes upon an inmate's religious exercise, the First Amendment requires that a valid, rational connection exist between that practice and a legitimate penological interest.  Ford v. McGinnis, 352 F.3d 582, 594 (2d Cir. 2004).

5.      If an inmate claimant can point to a reasonable alternative that accommodates her rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard. Covino v. Patrissi, 967 F.2d 73, 78-80 (2d Cir. 1992).

**Equal Protection**

1.      The Second Circuit has applied the First Amendment standard found in Turner to "the assessment of equal protection claims in the prison setting."  Benjamin v. Coughlin, 905 F.2d 571, 575 (2d Cir. 1990).  "As to such claims, the reasonableness of the prison rules and policies must be examined to determine whether distinctions made between religious groups in prison are reasonably related to legitimate penological interests."  Id.

**DEFENDANTS PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW ARE ATTACHED TO THIS MEMORANDUM**

## XVI.   TRIAL TIME

April 23, 2013 to April 25, 2013.

## XVII.  FURTHER PROCEEDINGS

1.      Defendants have filed a motion to preclude Plaintiff from offering improper opinion testimony from lay witnesses.

2.      Defendants have filed a motion to preclude Plaintiff from offering deposition testimony of Abdullah Antepli.

ME1 15461463v.1

3.      Defendants have filed a motion to preclude any evidence sought to be offered that pre-dates Plaintiffs transfer to Cheshire Correctional as it pertains to his Jumah claim.

4.      Plaintiff previously filed a motion to preclude the expert opinions of Theresa Lantz and Anthony Bruno in connection with the Islamic faith and security, document #169, dated April 7, 2008.  The Court previously ruled that such motion should be re-filed at the time of trial.  This motion has been re-filed and oral argument is requested.

5.      Plaintiff will further file a motion to preclude expert witnesses disclosed late or not at all.

6.      These motions are attached hereto and will need to be decided in advance of trial. A pre-trial conference is scheduled to be held on April 19, 2013.

## XVIII.      ELECTION FOR TRIAL BY MAGISTRATE

The parties have agreed to have this case tried by a United States Magistrate Judge.  The parties have also elected to have any appeal heard by the Court of Appeals.

## <u>CERTIFICATION</u>

Pursuant to paragraph 3 of this Court's Pretrial Order, counsel for the parties have conferred with each other and represent that this Joint Trial Memorandum is the product of consultation between the lawyers who will be trying the case.

| PLAINTIFF | DEFENDANTS |
|---|---|
| Joe Burgos Vega, #130135 | Theresa Lantz, et. al. |
| McCarter & English, LLP | GEORGE JEPSEN<br>ATTORNEY GENERAL |
| | |
| By:/s/ Charles D. Ray_____ | By:\_/s/\_Edward Wilson, Jr. |
| Charles D. Ray, Fed. Bar #CT13211 | Edward Wilson, Fed Bar # ct29119 |
| Jordan D. Abbott, Fed. Bar #CT28618 | Steven R. Strom, Fed Bar # ct01211 |
| McCarter & English | Assistant Attorneys General |
| 185 Asylum St. | 110 Sherman St. |
| Hartford, CT 06103-3495 | Hartford, Ct 06105 |
| 860-275-6700 | Email: e.wilson@ct.gov |
| Email: cray@mccarter.com | steven.strom@ct.gov |
| Jabbott@mccarter.com | |

ME1 15461463v.1